May it please the court. Good morning. My name is Arden Levy. Here today along with Douglas Capdeville on behalf of Hovenza. I will. May I just ask a preliminary question in terms of what you don't want us mentioning. In terms of what the confidentiality agreement that you've stipulated to numbers you don't want us talking about, is that correct? That's correct, Your Honor. Just settlement numbers. Yes, that's correct, Your Honor. In terms of the sealing motion that's before us, is it only the numbers that need to be sealed? Is that the idea? Your Honor, for purposes of publishing beyond this hearing it would be Hovenza's preference that mention of the settlement is not made. However, if that's not possible for purposes of this argument, then we would ask at least that the numbers remain sealed. I would like to reserve two minutes of my time for rebuttal. Very good. This case is about Lexington's attempted misuse of the Federal Interpleader Act to obtain a de facto favorable resolution of the insurance contract dispute at issue. After Lexington breached two employment liability insurance policies by depriving Hovenza of insurance funds to settle underlying claims in June of 2005, and despite standing as a wrongdoer, Lexington invoked interpleader. Let me ask you a question about the in response to Lexington's argument that you're collaterally attacking subject matter jurisdiction, you argue that the interpleader action was never dismissed, but only the interpleader bond. But I'm looking at the stipulation for this argument, the interpleader bond, and it says that Lexington Insurance Company's petition for interpleader should be granted, and that Lexington Insurance Company should be discharged from this action, such as the terms and conditions set forth below. The action's being discharged, right? Your Honor, the agreement in its entirety was an agreement to retain all claims and defenses for the Hovenza's breach of contract action. And after Judge Gomez took certain action at the District Court to dismiss all claims, the parties then entered into an agreement to confirm that what they had decided to do was to discharge the bond, and that was the extent of the agreement. But it does say that the Lexington Insurance Company should be discharged. How's that not letting them out of the subject matter jurisdiction when you've got that kind of statement in the stipulation? Your Honor, there is that wording in the agreement, but then it's followed by an agreement between the parties to preserve all rights and defenses that would relate to Hovenza's ability to pursue the breach of contract claim, and in the context of the two consolidated matters. And so it's Hovenza's position that that did not discharge the entire action with the follow-on agreement in the appendix at 254 to 257. You contend that you don't have two adverse claimants here, but certainly Hovenza and Jacobs have been adverse at all relevant times with respect to how this matter is supposed to be settled. So why isn't Lexington clearly entitled to interplead these funds because of these two dueling claimants, if you will? Well, Your Honor, we can look to a few points in order to find that there was only one claim for purposes of interpleader. Who has that claim? It was Hovenza's claim on Lexington to release the proceeds towards settlement. But Jacobs was not in agreement, so they're adverse. This looks to me like a poster child for  settlement. Only if I agree can you do this. Well, Your Honor, Jacobs' directive was not to pay the funds. It was for Lexington to hold the funds. Well, but the point was so that they could then pay out in favor of both parties, not just one. Well, Your Honor, in State of Nevada v. Pioneer Companies, the Court addressed this kind of issue where there was an issue as to the timing of whether funds should be paid. And the Court there explained that when a request or when one of the issues was related to something other than to whom or ownership Well, but this was to whom? It was to the people you were leaving out of the settlement, the claimants that had claims against Jacobs. So it was a to whom situation, was it not? 1335 says claims or may claim. Claiming or may claim. And it seems to me quite obvious that Jacobs falls under that may claim part. Your Honor, Your Honor, even if what we can look to as the best evidence is Lexington's own statements about what it thought were claims, and it clearly did not take the position that the underlying claimants were any barrier or hurdle to paying out, itself stated Lexington is not refusing to pay the remaining limits of liability of its policies. Lexington will pay the remaining limits of liability if both Hovenza and Jacobs agree. That's seen in the appendix at 430, 452 to 453, 649. There are multiple places where Lexington made the statement that the only potential claims that it might even consider would be between Hovenza and Jacobs, not any underlying claimants. That was something that was How do you distinguish this situation from Hovis, such that the interpleader if proper, would not bar your claims? Well, Your Honor, there were several different factual circumstances in Prudential v. Hovis. First, jurisdiction there was not brought pursuant to 1335. It was diversity jurisdiction. Second, you had the parties agreeing that they were that there were two or more claims and that interpleader was proper. Do those things really matter? How does it matter what it's brought pursuant to and whether they agree or whether we would conclude that the claimants are adverse? Your Honor, a jurisdictional requirement of 1335 is that there be two or more adverse claims and that's not a requirement of diversity jurisdiction and so that was not an issue that this Court addressed in that case. But assuming we find that there were adverse claims under 1335, then what's your argument? Well, Your Honor, then our position is that Prudential supports Hovens' right to bring its counterclaims separate and that those should not have been dismissed or shielded from liability. I thought Hovis said exactly the opposite. Well, Your Honor, Prudential confirmed that there are circumstances when a stakeholder should be kept in litigation to defend against independent counterclaims and it gave examples of independent counterclaims in situations that were distinguishable from the facts there. High Technology, a Sixth Circuit case from 2007 where the counterclaim for damages to the property, the isotopes, was construed as separate from distribution of that property. Yeah, but here it is distribution. It is who gets the pot. Who gets the pot? Who has the right to say who gets the pot? Who ends up with the money? The Hovensa claimants and not the Jacob claimants is your view. How is that different from it was a question of whether this one claimant got the entire pie or just a small piece of the pie? Your Honor, in Prudential and Hovis, Prudential v. Hovis, the situation, the counterclaim was challenging the insurance company's investigation so that it would be the sole beneficiary and obtain exclusive ownership. So it really was about who gets the money. Does this person's claim, you said it relates back, and that's it. Over. Well, that's correct, Your Honor. In that case that what the investigation would have, the results of that investigation, had it been in that Hovis, the counterclaimant's favor, then they would not have been able to bring their claim because their claim had to do with ownership. Here Hovensa's counterclaim for breach of contract, that was a claim that it could have brought as soon as Lexington breached in June of 2005. The point is, they're saying that, yes, we owe something under this contract, and we got these two parties that are fussing about it, feuding, and we're just going to turn it over to the court, let the court decide it, and your first argument, I guess, is you're saying that Jacobs wasn't an adverse claimant, which I don't buy, and then it looked like you were also collaterally attacking the jurisdiction, and that didn't seem, based on my first question to you, doesn't seem to make sense, and lastly, it just seems like this case really fits under what we said in Hovis. Well, Your Honor, in Hovis, there, because, part of the court's reasoning about why this was not an independent counterclaim was because, had Prudential expedited its investigation and paid out the proceeds to Hovis, it would have faced a similar suit from Potter for ownership, because then another claimant would have sought ownership of the proceeds, but here it was a completely different situation. Had Lexington fulfilled its obligation and paid out the funds in June of 2005, there would have been no ownership dispute, because the funds would have been paid to resolve claims on behalf of both Hovenza and Jacobs. But wait a minute, but then there were Jacobs claimants still out there. There were four Jacobs claimants still out there. So it wouldn't have resolved everything. Well, Your Honor, there would have been the initial, the existing settlement or insurance funds as of June of 2005 were not sufficient to cover any of the claims, and so there was going to be excess that would be paid out. You'd made a proposal that they rejected in terms of who was responsible for what, and that's what ultimately ended up in this stipulation. So, clearly, at that point, they think that there is not an agreement with regard to the insurance proceeds, and they don't want to let that go, because that's probably the only leverage they have in terms of trying to get this thing resolved in the end. Back again, it's hard to say that they're not adverse. I mean, if you put yourself in Lexington's shoes, what do you do? Your Honor, there was a risk for Lexington that it might have been subject to this threatened bad faith claim by Jacobs, assuming that Jacobs would have brought it, but that's an extra contractual claim. That's not for, that would have been for— Well, I hope it wasn't an extra contractual claim. That's correct, Your Honor, because there, the claim was for ownership of the life insurance proceeds. Here, where there was a third-party liability insurance case, then the issue was that Juvenza was seeking damages that were unrelated to the actual funds. Its breach of contract claim that it could have brought before the interpleader, separate from the interpleader, was for the damages, the additional defense and indemnity costs that it incurred as a result of Lexington breaching its obligation. But that would only have arisen if Juvenza was legally obligated to pay these settlement funds, and there was no binding settlement agreement, was there? Your Honor, there was an agreement between Juvenza and the underlying plaintiffs that they would pay these funds as long as they could get these funds from Lexington by a certain date. When that didn't happen, Juvenza was deprived of the funds and essentially forced to back out of that. But Juvenza was never legally obligated to absolutely pay this money. Your Honor, it was legally obligated so long as it could— So long as they could get the money, so it was conditional. Your Honor, it was a conditional settlement only to the extent that it was unable to obtain those insurance proceeds. Before you sit down, just a couple questions. You state on page 12 of your brief that Lexington had already concluded that the settlement offer was reasonable. Where in the record—you'll have to find it in a second—but when you sit down, can you tell me when you get back up on rebuttal, where in the record that conclusion is reflected? Yes, Your Honor. And then the other thing is on page 23 of your brief, you cite the Fifth Circuit case, Tittle v. Enron, for the proposition that the mere threat of multiple vexation by future litigation cannot suffice to create subject matter jurisdiction. But I'm looking at the Tittle case, and it looks to me like it says just the opposite, that the mere threat of multiple litigation by future litigation provides sufficient basis for interplea. It rejects that argument. It's just the flip of what you suggest on page 23 of your brief. Your Honor, Tittle does state that, as you say. Looking at Tittle in combination with this Court's precedent and other courts, that the mere pretense of claims, as this Court stated in Bierman, or speculative claims that are either utterly baseless or without foundation in the record, then those claims are not enough to be the mere threat of claims. Tittle is, quote, the mere threat of multiple vexation by future litigation cannot suffice to create subject matter jurisdiction, close quote. And what Tittle says is the, quote, mere threat of multiple vexation by future litigation provides sufficient basis for interplea, close quote. It's literally the opposite. Yes, Your Honor, but that is accompanied by the requirement that the dispute be between two claimants and not a dispute between an insured and an insurer and the stakeholder. And that statement in Tittle was combined with this discussion that the purpose of interpleader is to avoid dispute with the insureds. And that's not what happened here. Here what happened was Lexington had a contractual dispute with Hovenza as to whether it should, whether it was obligated under the contract to pay. And it failed to fulfill that obligation. It then notified Hovenza that it had a threatened bad faith claim from Jacobs. If it paid, again, a bad faith claim would be an extra contractual claim and something outside the scope of the funds. Multiple litigation. I mean, they don't want to go through this again. That's the whole point. I mean, for example, when you suggested that they file declaratory judgment actions, why would they care? They don't care who gets the money. I mean, they were already in kind of a bad deal. They got a fairly low premium for a lot of exposure that ended up being brought their way. All they care about is they're indifferent who gets the remainder of the policy limits. Well, Your Honor, in order to have a, in order to fulfill the requirements of 1335, the stakeholder has to be admitting liability. And at the time that it breached its contract and it failed to tender the funds, Lexington was taking the position that it was not liable to Hovenza at that point. That it had the right to withhold those funds and deprive Hovenza of those funds to settle. I don't know who gets it. This person might get it. That person might get it. You decide. It's sort of punting. So, by virtue of filing it, it indicates that they believe that they are responsible for up to the limits of the policy. Whatever the court orders it to be, if it's up to the limits. Your Honor, that is, I see I'm out of time. If I can proceed answering that question. By making a, taking the position that it would not settle and could not settle until the time that it was, it decided in Jacobs that it also needed Jacobs to consent, it was taking the position that it was not obligated at the time. It made this statement in the appendix at 935 to, in correspondence, that only quote, after both Hovenza and Jacobs agree to allow Lexington to release the money, will it pay the remaining policy limits? And by making that statement and others similar to that, it was taking the position that it was not liable and it was not ready to pay those limits at that time. Good. We understand your position. Thank you. Have you back on rebuttal. Thank you. Mr. Cohen. Good morning. Good morning. May it please the Court, Mark Cohen. I represent Lexington Insurance Company in this case. What is your position, if you have one, on the sealing order after the disposition of this case? Whatever Hovenza wants sealed, we have no objection to that. Very good. I'd like to pick up on a few questions that you asked and Ms. Levy's responses. First, with regard to the collateral attack issue, I'm not quite sure what later agreement Ms. Levy is  entering into a stipulation saying, quote, Lexington's petition for interpleader should be granted, unquote, and, quote, Lexington should be discharged from this action, unquote. And that's exactly what happened after the stipulation was filed. In fact, the interpleader action was dismissed, the bond was discharged, the money was given over to Hovenza and Jacobs. They each split it 50-50, and Hovenza used that money then to settle the cases with the underlying defendants. Once an interpleader bond is discharged, then the case is over. There's nothing more to an interpleader than what to do with the stake, in this case, what remained in the policy limits. Once that was determined, and as you mentioned, there was a list of which plaintiffs were going to get what out of the settlement, there's nothing left of an interpleader. It's gone, it's over, and Hovenza can't come back years later and say, well, wait a second, there was no subject matter jurisdiction. Well, why can't they? Subject matter jurisdiction is always something that the court can look at. The court can look at subject matter jurisdiction in this breach of contract case, but they cannot look at subject matter jurisdiction of a prior case that has been concluded, which was the interpleader action. There's authority from both this court and the United States Supreme Court, and all sorts of other courts making that point. In fact, the Third Circuit particularly said that that's especially the case when the party that's attacking jurisdiction accepts the benefits of the prior action, which Hovenza did by taking our settlement money and using it to pay off the claims against it, and so they can't make a collateral attack. Is the counterclaim that was filed, do you believe it was compulsory or permissive, the one against you after you filed the interpleader action? Honestly, I don't have a position on that. That issue never was raised. Isn't that important as to whether there can be a collateral attack on subject matter jurisdiction? If it's compulsory, then it's not a separate lawsuit. If it's permissive, it might be considered to be as such. Well, even assuming for the sake of argument that it was compulsory, which I don't know that it was, and they filed a separate lawsuit in addition to filing for the counterclaim and the interpleader, the point is that the interpleader part of that lawsuit was dismissed, and so all that remained was the counterclaim. Once the interpleader is gone, then if they years later try and say there was no subject matter jurisdiction for this case, we never argued there was no subject matter jurisdiction when it was pending or even during the trial court in this action, that makes it a collateral attack for which they can't raise it. Assuming we think they can raise it, what's your position on the adverse interests? I think your comments were exactly right. This clearly was the textbook example of an adverse case that interpleader is designed for. You have Coventa saying we want to enter into the settlement agreement, and we want you to give all the money to us, and then we want to get all our money back from Jacobs. And Jacobs will say, oh, wait a second, we don't agree with this proposed settlement. It's for way too much money. It doesn't include four cases against us, and it's only a case against two individual defendants in that case, and you're going to be leaving us without any insurance funds for that. It's also important to remember here that in this policy, defense costs are included within the policy limits, so the defense costs that were being incurred in this case were part of the stake. And as the cases went on, there were obviously more defense costs going on, and Jacobs wanted to use its portion of the stake to pay to defend these 17 cases that were pending and ongoing at that time. So I think, as you indicated before, there clearly was adversity here. In addition to that, it's also well established that an interpleader action can proceed, and it has subject matter jurisdiction if there is multiple vexation. And the classic textbook example of multiple vexation is when a liability insurer, like Lexington, is sued for claims that have a value of more than the policy limit. There are scores of cases saying that interpleader is proper in that situation. Everywhere from the United States Supreme Court decision in Tashire to the District Court of the Virgin Islands decision in the Construcciones case, so that involved a surety bond and not a liability policy, but there are literally scores of cases saying that interpleader is proper in that situation. Mr. Cohen, is this case really like Hovis? Because what you have here is a claim by Hovenza, not an ultimate claimant, i.e. plaintiff, who wants a share of the pie, but an entity that is the contractual party that believes you wrongly refused to pay under the policy. So there is really, the issue here is not pay me more of the pie. The issue is I could have settled for let's say $3 million, and I ended up settling for $5 million. My damage is not that I want the plaintiffs to get a bigger piece of the pie. The damage is that the settlement wasn't accomplished when it should have been, and therefore I'm out more money. Isn't this different from Prudential v. Hovis? No, I don't think it's any different at all. And what the court in Prudential said was that as long as the filing of the cross-claim relates to the reason why the interpleader is filed, the stakeholder that files the interpleader is shielded from liability. But that's my point. I don't know that it really does relate to ultimately who gets the money. Let's imagine that what happened here wasn't that a conditional deal was brought to Lexington, but instead an absolute signed, sealed, and delivered agreement where Hovens is obligated to pay claimants, and it's no condition. They are obligated to pay, and they bring you this agreement, and they say pay under the policy. Would you have had any right to refuse to pay at that point? Yes, of course we would have, because this is a duty to defend policy, and part of the duty to defend policy. It's a policy that gives Lexington the duty and obligation to defend claims. But the ultimate agreement is to pay all loss amounts that Hovensa becomes obligated to pay as a result of these claims. Is that correct? With all due respect, it's all loss amounts that the insured is legally obligated to pay as a result of the claim. What if they had a settlement agreement where they are legally obligated to pay out let's say $3 million on a date certain, and they come to you. Wouldn't you have been obligated? No, because a voluntary and unilateral settlement by insured without the insurer's consent is not a settlement that the insured is legally obligated to pay. Now if Lexington had agreed to a settlement, and then we nigged on that and said no, we've changed our mind. We think the case is worth less than it is. That would be a different story, but that's not the situation. But I guess my point is those kinds of issues are not the kind of issues that we were talking about in Hovis. In Hovis it's who gets a piece of the pie, and this isn't a who gets a piece of the pie argument. Well, I think the interpleader was fouled for that very issue. Who gets the pie? Now Hovensa claimed they wanted the whole pie, and to get its money back from Jacobs, and Jacobs said no. We want the pie, or a part of the pie at least, to pay for the defense of these cases, to settle the four cases that weren't involved in the settlement, and to settle the cases in terms that we thought were reasonable and fair and favorable to us. So this was exactly two parties who were getting a piece of the pie, and Lexington filed this interpleader action in order to have the court determine who's right. Was it Jacobs, correct, that it had a right to refuse to consent to the settlement, or was Hovensa right? Now the standard for adversity, Your Honor, is extremely low in this situation, contrary to what Hovensa says. Courts have said that interpleaders should be liberally construed. As you noted, the statute itself refers to claim or may claim. Interpleader is proper even if there's a slight or minimal threat of adverse claims. Courts have said that the threat just has to not be utterly baseless. I mean, clearly this case met those requirements. As far as the argument that this somehow is an independent counter claim, again I would point you to Hovensa's own statements in the briefs in which they expressly said that the reason they were suing Lexington is because Lexington chose to file the interpleader rather than favoring Hovensa's position and tendering the money to it. In fact, Hovensa went on to indicate in one of their pleadings that they never would have sued Lexington if Lexington had only tendered the money to it. So that was the issue that the interpleader was designed to resolve. Your Honor, I would note that there's substantial case law that was supporting Jacob's position on that point from a variety of different jurisdictions in which the courts say that when there are multiple insureds and one insured wants to settle, the insurer can't settle. And what the insurer should do in that situation is first to try and orchestrate a global settlement. And if that doesn't feel, if that fails, should file an interpleader action. And that's exactly what Lexington did, guided by those cases. Lexington tried for a year to get these parties to agree. And Hovensa was saying, Jacob, you have to pay it all. And at some point they said, okay, well we'll pay 15% of it. And Jacob was saying that Hovensa, you have to pay most of it. And they couldn't agree with the plaintiffs on what the case was worth despite Lexington's efforts to have them set up a global mediation. So that's what this whole interpleader case was about. And what should have happened is that Hovensa and Jacob should have used the interpleader as a forum to have the court resolve who was right, but neither of them did anything for almost two years after the interpleader was filed. They didn't move to have the court decide the issue. They didn't do any discovery. They didn't do anything. And eventually they settled the case and Lexington agreed and the interpleader case was dismissed. So the court never got to the adjudicative part of the interpleader statute? We never got to the second phase of the interpleader because there was a settlement that the parties were able to iron out with the help of a judge, Magistrate Cannon, as a matter of fact, right here down the hall in 2007. If anybody doesn't have any other questions, I see I'm running out of time so I'll just sum up. Lexington was an insurance company that really did everything right here. They tried to get the case settled. They actively encouraged its insurers to try to make peace among themselves. Tell me again why they would not have been obligated to pay if the settlement were binding? I was just looking at the policy provision. What did you say? What was the out? That a voluntary unilateral settlement by an insured is legally obligated to pay? Is that in the policy? Is that a provision of the policy? Legally obligated to pay is? No, legally obligated to pay but it's that Hovensa is legally obligated to pay. If they had signed and there was a document saying they had to pay on April 30th all this money to all these people and they brought it to you, what's your contention as to how Lexington would not have been obligated to pay that? You breached the policy. You breached the policy that says that they have to cooperate with Lexington in the settlement of cases. The no action clause in the policy states that Lexington can only be sued by an insured if there was a judgment or an agreed settlement and an agreed settlement is defined as a settlement in which the insurer and insureds all agree to. Also wanted to mention that in the Permis de Lisa case, this court decided this very issue. It was under New Jersey law but basically said that a unilateral voluntary settlement by an insured is not one that the insured is legally obligated to pay. Just to finish summing up, Lexington did everything right here. They were faced with parties, insurers that were adverse to each other. They were in their aggregate were worth far more than the policy limits as everyone including Provenza agrees. This is a classic textbook situation for interpleader under both of these theories, the adversity and the multiple vexation. In addition to that, this is clearly a collateral attack on a prior action that was resolved that Provenza had every opportunity to raise subject matter jurisdiction while the interpleader action was pending for whatever reason they didn't or they didn't choose to and to now come into court six years after the fact and try and raise the subject matter jurisdiction issue in another case now is totally improper. Thank you. Thank you Mr. Cohen. Ms. Levy. Thank you Your Honor. We have four points on rebuttal. First to respond to Your Honor's question about reasonableness, we look to the Lexington's position itself was that it never challenged that reasonableness until much, much later in this litigation. At the time of the settlement offer, it claimed that it was ready and willing to pay and it never challenged the reasonableness of that time. Do you have any record reference? Yes, Your Honor. That's at joint appendix 119, 123, 219, 220, 430, 452, 53, 933, 935 to 36, 958, 995 to 96. Lexington was obligated under the policy to pay those limits. Again, we point to Lexington's agreement, its statements itself, the evidence that Lexington never challenged its obligation to pay up until long after the interpleader had been filed and Hovenza was relying on Lexington's earlier statements that settlement was proper and that Lexington would pay once there was a settlement in place. Its position that it took after the fact really left Hovenza hanging there without the insurance that it thought that it had and relied upon when it negotiated settlement. Hovenza reasonably believed that a settlement, as stated by Lexington, was anything other than what ultimately was achieved, i.e., a meeting of the minds among all potential claimants. Well, Your Honor, the agreement between Lexington, between Hovenza and the underlying claimants, Hovenza entered into that agreement with the understanding that Lexington was going to maintain the promises that it had already made, that it would cover that settlement. I see that I'm about out of time. If I can finish answering that question and then quickly conclude. The settlement was made with the understanding that Lexington would cover that settlement and there was no objection from Lexington that it was not obligated. The policy language was very different from the other examples that Lexington has made. This policy language required payment for all loss amounts that included settlements and the premise delista, excuse my butchering the case name, that this Court has ruled on before, that and other cases like it involved pre-litigation circumstances with very different policy language, and so we don't believe that those are applicable to this particular situation. Your Honor, Hovenza respectfully requests to this Court that it reverse and vacate the lower court's decision for Lexington and grant Hovenza an award of summary judgment and remand to the District Court for an award of damages. We believe that should the District Court's decision stand, there will be a question about whether insurers will have free reign to abuse the interpleader statute and seek its equitable protections when only one insured has made a claim for funds, and also whether insurers may try to use interpleader as a get out of jail free card to avoid liability for wrongful conduct as long as there are multiple parties involved in a third party liability situation. Thank you, Ms. Levy. The case was very well argued by both sides. The Court will take the matter under advisement.